**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

COURTNEY GRAHAM, an individual,

      Defendant.

_____ /

Civil No. 26-cv-11139

Honorable

**<u>UNITED STATES OF AMERICA'S COMPLAINT</u>**
**<u>FOR PERMANENT INJUNCTION</u>**

Plaintiff, the United States of America ("United States"), through its undersigned counsel, hereby sues Defendant Courtney Graham, ("Defendant") and alleges as follows:

**<u>INTRODUCTION</u>**

1. Since at least August 2024 and continuing to the present, Defendant has knowingly and willingly facilitated and assisted a fraudulent scheme.

2. Through this scheme, the perpetrators of the fraud meet their targets online, befriend them, and instruct them to send money to Defendant under false pretenses, such as to contribute large sums of money to open a shelter. The targets, who are strangers to Defendant, send monetary instruments to Defendant

1

via U.S. Priority Mail.   Defendant then transmits these monies to an individual located outside of the country.

3.      Defendant met the individual that she sends the money to online.   She has stated that she is in a relationship with that person, though they have never met in person.

4.      The United States seeks to prevent the continuing and substantial injury to victims of this fraudulent scheme by bringing this action for a permanent injunction and other equitable relief under 18 U.S.C. § 1345.   The United States seeks to enjoin the ongoing commission of mail fraud and wire fraud as defined in 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action under 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant is a resident of this district and because a substantial part of the events or omissions giving rise to the Complaint occurred in this district.

## PARTIES

7.      Plaintiff is the United States.

8.      Defendant is a resident of this district, residing in Ypsilanti, Michigan. Defendant engaged, and continues to engage, in the conduct described in this complaint from her residence within the Eastern District of Michigan.

## FRAUDULENT SCHEME

9.      Since at least the summer of 2024, Defendant has been a knowing participant in a "romance scam."   A romance scam is typically a scheme in which an individual starts talking to a stranger they meet online, not knowing that stranger is a fraudster that intends to involve them in a fraud scheme.   Eventually, after developing a friendship or romantic relationship, the fraudster will ask the victim to send them money based on false representations about the need for the funds.

10.     If the victim does not have money to send, sometimes the fraudster will use that person as a money transmitter by routing payments from other victims to that person and instructing that person to transfer the money to the perpetrator. A money transmitter plays a critical role in the scheme by receiving the money from other victims and obscuring the transfer of funds from those victims to the fraudster.

11.     Defendant's role in this case is that of money transmitter, whereby she met a fraudster online and has been receiving money at her home from other

victims via Priority Express Envelopes.   Defendant then transmits the money to the fraudster.

12.    Defendant has stated that she met an individual named Mike White ("White") online a couple of years ago, that she is a relationship with White, and that she has never met White in person.   Defendant has stated that White told her that he is in the United States Army and stationed overseas, and needs Defendant to send him money because his bank account was frozen due to him being overseas.

## DEFENDANT'S KNOWLEDGE OF FRAUD

13.    In August 2024, the United States Postal Service ("USPS") intercepted a suspicious package intended for an elderly couple in Alaska.

14.    An investigation revealed that the couple believed they were involved in a project with a famous celebrity to open a children's shelter in Anchorage.   As part of that "arrangement," they sent over $55,000 via various electronic methods and by USPS mail.   At least one of those payments was sent to Defendant via USPS mail.

15.    On January 16, 2025, United States Postal Inspection Service ("USPIS") Inspectors interviewed Defendant about several USPS Priority Mail envelopes she had received.   She stated that the parcels in question all related to

4

White, the man she met online who claimed to be in the Army and was stationed overseas.

16.     White told Defendant that his bank account was frozen and that he needed Defendant to send him money.

17.     To that end, White would tell Defendant that money was coming to her and White would instruct Defendant how to forward the money to White. Defendant told Inspectors that she had received money from people she did not know and had never spoken to, which she then transferred to White via wire, mail, and Bitcoin.   Defendant also stated she has kept small amounts of the money to pay for shipping and associated costs.

18.     USPIS Inspectors explained to Defendant that she was involved in a scam and that some of the people sending Defendant money thought they were donating to various charities.   Defendant admitted that she thought there was something wrong with her relationship with White and agreed to stop the fraudulent activity.

19.     USPIS inspectors presented Defendant with a Voluntary Discontinuance, which Defendant executed on January 16, 2025.   In substance, Defendant acknowledged that she was involved in an illegal scheme and agreed to

refrain from engaging in the fraudulent scheme, namely by receiving money in the mail from unknown senders which she then forwarded on to others.

20.     The United States alleges that as a result of the Voluntary Discontinuance, Defendant has knowledge that any monies she received from sources by means of false representations after that date constitutes mail fraud.

### DEFENDANT'S ONGOING VIOLATIONS

21.     Despite the Voluntary Discontinuance, Defendant continues to facilitate the fraudulent scheme.

22.     By early February 2025, Defendant was again receiving packages containing money intended for White.

23.     Over thirty packages have been sent to Defendant with fraudulent proceeds after she signed the Voluntary Discontinuance.

24.     Among the post-Voluntary Discontinuance victims is an individual residing in Northern Maine ("Maine Victim").   When USPIS Inspectors spoke to Defendant in January 2025, Defendant provided Inspectors examples of seven USPS Priority Mail envelopes that she had received from the Maine Victim, some of which had checks made out to Defendant that appeared to have been endorsed by Defendant.

25.    USPS records demonstrate that the Maine Victim sent at least three more USPS Priority Mail envelopes to Defendant in the months following Defendant's Voluntary Discontinuance.

26.    On September 15, 2025, USPIS Inspectors interviewed the Maine Victim, who confirmed that she mailed numerous packages to Defendant.

27.    At first, the Maine Victim said that Defendant was a distant family member.   However, she later admitted that she never met Defendant and was instructed to say that Defendant was a relative.

28.    The Maine Victim stated that she met a man online who claimed to be an engineer who had moved to Germany to work on building a bridge.   This friend told the Maine victim that he was among a group of engineers being threatened by "the cartel" and needed money.

29.    The Maine Victim was instructed to send packages containing money to Defendant, with the understanding that Defendant's would send the money to Defendant's husband, who worked with the group of threatened engineers in Germany.   The Maine Victim sent numerous packages to Defendant, each containing between $5,000 and $6,000.

30.    The most recent package the Defendant received from the Maine Victim was on November 10, 2025.

7

31.     USPIS Inspectors have identified packages being sent via USPS Priority Mail to Defendant from various senders across the country, including from New Mexico, New Jersey, Ohio, Oregon, Florida, and New York.   All of these packages were sent after Defendant signed the Voluntary Discontinuance.

32.     USPIS intercepted several of these suspicious packages prior to delivery.   When the senders were contacted, they indicated they had been sending large quantities of money to Defendant, which they requested be returned.

## HARM TO VICTIMS

33.     Victims have been harmed by the fraudulent schemes facilitated by Defendant.

34.     Defendant plays a critical role in the fraudulent schemes by receiving victim payments by U.S. Priority Mail in the form of cash, checks, and cashier's checks, and transmitting them to White.

35.     Victims suffer financial losses from the mail fraud schemes facilitated by Defendant.   As explained above, numerous individual victims have been defrauded of tens of thousands of dollars.

36.     Absent injunctive relief by this court, Defendant will continue to cause continuing and substantial injury to victims.

## COUNT I

### (18 U.S.C. § 1345 – Injunctive Relief)

37.     The United States re-alleges and incorporates by reference Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

38.     By reason of the conduct described herein, Defendant violated, is violating, and is about to violate 18 U.S.C. § 1341 and 1343 by facilitating a scheme and artifice to defraud and obtain money or property by means of false or fraudulent representations with the intent to defraud, and, in so doing, use the United States Postal Service and interstate wire communications.

39.     Upon a showing that Defendant is committing or about to commit mail or wire fraud, the United States is entitled, under 18 U.S.C. § 1345, to seek a permanent injunction restraining all future fraudulent conduct and to any other action that this Court deems just and proper to prevent a continuing and substantial injury to the United States and its victims.

40.     As a result of the foregoing, the Court should enjoin Defendant's conduct under 18 U.S.C. § 1345.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, requests of the Court the following relief:

9

A. That the Court issue a permanent injunction, pursuant to 18 U.S.C. § 1345, ordering that Defendant is restrained from engaging, participating, or assisting in any romance scam or money transmitting business; and

B. That the Court order such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

Date: 4/7/2026

/s/John Postulka
JOHN POSTULKA (P71881)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9118
john.postulka2@usdoj.gov

10